MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

THOMAS E. STEVENS  (CABN 168362)
Assistant United States Attorney

450 Golden Gate Ave., Box 36055
San Francisco, California 94102
Telephone:  (415) 436-7200
Fax:  (415) 436-7234
E-Mail:  Thomas.Stevens@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-11-0814 JW |
| | ) | |
| Plaintiff, | ) | **UNITED STATES' SENTENCING** |
| | ) | **MEMORANDUM AND RESPONSE TO** |
| v. | ) | **PRESENTENCE REPORT** |
| | ) | |
| ROBIN M. O'CONNOR, | ) | Date:  March 26, 2012 |
| | ) | Time:  1:30 p.m. |
| Defendant. | ) | Courtroom:  9, 19th Floor; Hon. James Ware |
| | ) | |

## I.  INTRODUCTION

In her Plea Agreement, defendant Robin M. O'Connor ("defendant" or "O'Connor") pleaded guilty to an information charging her with one count of wire fraud, in violation of 18 U.S.C. Section 1343.  The offense arose from her embezzlement of funds while working as a payroll manager for San Francisco Baseball Associates L.P., owner of the San Francisco Giants Baseball Club (the "Giants").

The Plea Agreement was submitted to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(B).  The parties agreed that, under the advisory Sentencing

Guidelines, the adjusted offense level is 20 (33 to 41 months).  The parties further agreed that:
(a) the defendant will pay restitution of $1,456,865.60; (b) the defendant will forfeit two
automobiles, and approximately $565,000 seized from her bank accounts; (c) the government
will recommend that the net proceeds from the forfeiture be remitted to the Giants, and credited
toward restitution; and (d) the government will recommend the Guidelines calculation that
resulted in the above-noted offense level 20, and a sentence of imprisonment that is not more
than the low-end of that range (i.e., 33 months).

The Probation Officer's Presentence Report ("PSR") concurs with the Guidelines
calculations set forth in the Plea Agreement.  PSR ¶ 3.  The PSR, however, recommends a
sentence of 21 months, based upon certain factors under 18 U.S.C. Section 3553(a).  PSR, ¶¶ 77,
79, Sentencing Recommendation.

The United States respectfully disagrees with the PSR's recommendation of a 21-month
sentence, because it is too lenient given the defendant's conduct.  Based on the application of the
Guidelines and 18 U.S.C. Section 3553(a), the United States requests that the Court sentence the
defendant to a term of imprisonment of 33 months, three years supervised release (with the terms
and conditions recommended in the PSR), and to pay restitution to the Giants of $1,456,865.60,
less any amount received by the Giants through remittance of forfeiture proceeds.

## II.  PROCEDURAL AND FACTUAL BACKGROUND

On November 14, 2011, the defendant appeared before this Court and entered a plea of
guilty to wire fraud, in violation of 18 U.S.C. Section 1343.

In pleading guilty, the defendant admitted that, from 2007 to July 6, 2011, she worked as
a payroll manager for the Giants.  From June 2010, through June 2011, she diverted
approximately $2.2 million from the Giants and Giants employees by, among other methods,
transferring into her personal bank accounts (i) funds derived from improperly reducing
employee tax withholdings, (ii) funds intended to pay employee salary and expenses, and (iii)
funds from fictitious paychecks that she created.  During the course of the scheme, she returned
approximately $360,000 to her employer.  On July 6, 2011, after the Giants detected the scheme,

1    O'Connor returned additional funds of approximately $600,000.

2           In carrying out the scheme, she caused multiple electronic fund transfers, which traveled

3    in interstate commerce, to be made from a bank account controlled by the Giants, to her personal

4    bank accounts.  The transfer which forms the basis of the count to which the defendant pleaded

5    guilty occurred on September 15, 2010, when she caused to be transmitted by means of wire

6    communication in interstate commerce an electronic fund transfer of $286,427.77, from a bank

7    account controlled by the Giants to her personal bank account.

8           On July 8, 2011, FBI agents arrested O'Connor at her residence.  The defendant

9    immediately confessed to the agents and, through her counsel, promptly entered into plea

10   negotiations and concluded a plea agreement with the government.  The Plea Agreement includes

11   the defendant's promise to pay restitution in the amount of $1,456,865.60.  This figure is

12   comprised of a net loss of $1,234,450.60, plus $222,415.00, which is a portion of the

13   investigative costs paid by the Giants to their outside counsel and a forensic accounting firm.[1]

14   The agreement also includes provisions for the forfeiture of a BMW and Ford Raptor, as well as

15   approximately $565,000 seized from three bank accounts.  The United States agreed to

16   recommend that these proceeds be remitted to the Giants and offset against the total amount of

17   the defendant's restitution obligation.[2]

18   //

19   //

20

21   ─────────────────

22          [1]      The Giants organization and its advisors conducted a thorough and professional
     internal investigation.  The United States used information submitted by the Giants, and applied

23   the principles set forth in 18 U.S.C. Section 3663A(b)(4) and United States v. Gordon, 393 F.3d
     1044, 1057 (9th Cir. 2004), in concluding that $222,415.00 represented a reasonable estimate of

24   the portion of the Giants' substantial investigative costs attributable to the Giants' "participation
     in the investigation or prosecution of the offense . . . ."  18 U.S.C. § 3663A(b)(4).

25

26          [2]      As of the date of this memorandum, the forfeiture process has not been concluded.
     Thus, the Court may wish to defer entering a restitution order for 90 days, at which time the

27   offset amount is more likely to be known and the Court may then order restitution in an amount
     certain.  See 18 U.S.C. § 3664(d)(5).

28

**UNITED STATES' SENTENCING MEMO.**
CR-11-0814 JW

## III.  SENTENCING GUIDELINES CALCULATION

The parties agreed to the following Guidelines calculation (based upon Criminal History Category I):

| | | |
|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2B1.1(a) | 7 |
| b. | Specific offense characteristics | |
| | Loss (§ 2B1.1(b)(1)(I)) | 16 |
| c. | Acceptance of Responsibility (§ 3E1.1.): | -3 |
| d. | Total Offense Level: | 20 (33 - 41 months) |

As noted, the United States agreed to recommend a sentence of imprisonment that is not greater than the low-end of the above Guidelines range.

## IV.  RESPONSE TO PRE-SENTENCE REPORT

The United States concurs with the PSR's Guidelines calculations.  See PSR ¶¶ 22 – 32. However, the United States respectfully submits that the PSR's recommendation of a 12-month downward variance from the low-end of the Guidelines range is too lenient given the nature of the defendant's conduct.  The defendant embezzled a gross amount of over $2 million from her employer in the course of one year, and when she was caught by the Giants, she did not come clean – she made a misleading, incomplete admission, and returned only a portion (approximately $600,000) of the funds she had stolen.  Id. ¶¶ 8, 11.  Two days later, on the date of her arrest, the FBI seized an additional $565,703.84 from her accounts.  Id. ¶¶ 3, 9.

In addition, although the defendant explained her conduct in part as a misguided attempt to pay down debt in the event that she became solely responsible for the support of her household (which is itself, of course, no excuse for her conduct), and some of her expenditures of the diverted money could be characterized as such, she also spent significant funds for unrelated, lifestyle enhancement purposes.  Id. ¶¶ 42, 10, 12.

The Probation Officer's primary reason for the variance is concern for the care of the defendant's children.  Id. ¶¶ 77, 79, Sentencing Recommendation.  While the United States is

1   sensitive to the issue of family care, the defendant's circumstances do not appear to meet the

2   standard set forth in the relevant Guidelines provision, Section 5H1.6.  The Sentencing

3   Commission has concluded that "family ties and responsibilities are not ordinarily relevant in

4   determining whether a departure may be warranted." U.S.S.G. § 5H1.6.  In determining whether

5   to depart, a court should consider the seriousness of the offense, whether any family members

6   were involved, and the danger to the family as a result of the offense.  Id., App. Note (1)(A).

7   Here, although no family members were involved or endangered (physically) by the offense, the

8   conduct is very serious.

9        The Application Note to Section 5H1.6 further provides that, in addition to considering

10  the above factors, a court should consider whether the following circumstances exist:  (a) a

11  sentence within the Guidelines "will cause a substantial, direct, and specific loss of essential

12  caretaking, or essential financial support" to the family; (b) the loss of caretaking or financial

13  support "substantially exceeds the harm ordinarily incident to incarceration for a similarly

14  situated defendant"; (c) "the loss of caretaking or financial support is one for which no effective

15  remedial or ameliorative programs are reasonably available, making the defendant's caretaking or

16  financial support irreplaceable"; and (d) the "departure effectively will address the loss of

17  caretaking or financial support."  Id., Note (1)(B).

18       Here, the defendant is the primary caretaker (PSR ¶¶ 43, 47), and the United States does

19  not dispute that the defendant's incarceration will cause the loss of her support to the family.  But

20  that loss is no different than is the case for any defendant who is similarly situated, i.e., who

21  provides most or all of the caretaking but, irrespective of that fact, chooses to commit a serious

22  crime and place in jeopardy her family's care.  Additionally, the issue of whether the defendant's

23  caretaking role is "irreplaceable" is debatable, because her husband is available to assume that

24  role, although the United States does not minimize the impact on the children of the stated

25  necessity of moving them to a foreign country to enable the husband to become the caretaker in

26  the defendant's absence.  Id. ¶¶ 43, 46.

27       The dispositive factor against downward departure, however, is the fact that the

28

UNITED STATES' SENTENCING MEMO.
CR-11-0814 JW

5

recommended departure will not effectively address the loss of caretaking. According to the defendant's husband, if she is incarcerated for any period longer than a few weeks, he would be required to care for the children in his home country. Id. ¶ 46. The PSR itself recognizes that the recommended 21 month sentence would have this effect. See Id., Sentencing Recommendation, p. 2. Accordingly, a 12-month departure under Section 5H1.6 would not address the harm for which the "family ties" Guidelines provision was designed.[3]

Given the absence of a valid basis for a Section 5H1.6 departure, the United States respectfully submits that the Court can more appropriately account for the defendant's caretaking role as one among several factors warranting a sentence at the low end of the Guidelines range, i.e., 33 months imprisonment.

## V.  GUIDELINES APPLICATION

Based on the above Guidelines analysis and the application of 18 U.S.C. Section 3553(a) and other factors, the United States recommends that the Court sentence the defendant as set forth above in Section I.

The government recommends this sentence for the following reasons:

A.  Nature and circumstances of the offense and history and characteristics of the defendant

The nature of the offense is serious, given the significant amount of money that the defendant stole from her employer, the repetitive nature of the conduct, and the harmful effect that her conduct had on the Giants. PSR ¶¶ 15 – 17 (summarizing victim impact). In addition, the defendant spent much of the money on lifestyle enhancement items. Id. ¶¶ 10, 12.

However, the conduct appears to be an isolated event in the life of someone with no criminal history and who was suffering from, and reacted inappropriately to, certain personal and employment-related issues. Id. ¶¶ 42, 44.

//

---

[3]      The United States does not, in making this argument, imply that the Court should impose an even lesser sentence than recommended in the PSR. To the contrary, the United States submits that the Court should sentence the defendant to 33 months imprisonment.

UNITED STATES' SENTENCING MEMO.
CR-11-0814 JW

B.  <u>The need for the sentence to reflect the seriousness of the offense, respect for the law and to provide just punishment, deterrence and protection of the public</u>

The United States believes that the imposition of its recommended sentence will satisfy the policy concerns in Section 3553(a)(2)(A) - (C).  The defendant will serve a significant amount of time in prison, and will be obligated for years, perhaps decades, thereafter to devote substantial portions of any income she derives to repayment of a restitution order.  The United States concurs with the PSR's conclusion that it is unlikely that the defendant will be a recidivist. PSR, Sentencing Recommendation, p. 1.

C.  <u>Immediate Resolution of Criminal Case</u>

Promptly upon her arrest, the defendant confessed to her crimes.  Thereafter, through her counsel, she quickly engaged the United States in plea discussions and resolved the case, which included the voluntary forfeiture of assets beyond those seized by the FBI.  Thus, the defendant saved the government time, money and other resources, and made a meaningful, up-front contribution to restitution.  Because the defendant did not contest the criminal case and immediately accepted responsibility, the government was spared the expense and burden of trial preparation (<u>see</u> U.S.S.G. § 3E1.1(b)), and the plea also obviated the need to engage in certain resource-intensive investigative, procedural and discovery-related steps which precede the trial preparation stage.

**VI.  CONCLUSION**

For all of the foregoing reasons, the United States recommends that the Court impose upon the defendant the sentence set forth in Section I of this memorandum.

Dated:  March 16, 2012

MELINDA HAAG
United States Attorney


_____/s_____
THOMAS E. STEVENS
Assistant United States Attorney

**UNITED STATES' SENTENCING MEMO.**
CR-11-0814 JW